**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 18-201-DLB**

**TIMOTHY L. NOLAN** **PLAINTIFF**

**v.** **<u>MEMORANDUM OPINION AND ORDER</u>**

**JIM A. DALEY** **DEFENDANT**

*** *** *** ***

Defendant James Daley, Jailer of the Campbell County Detention Center ("CCDC"), has filed a motion to dismiss the complaint filed by plaintiff Timothy Nolan. (Doc. # 9). Nolan has filed his response to the motion (Doc. # 13), and this matter is now ripe for decision.

Nolan was confined at CCDC as a pretrial detainee from May 2017 through May 2018. Nolan alleges that immediately upon his arrival at the jail in May 2017, he advised Daley that he suffered from several medical and psychological conditions which required medication and treatment from a specialist. While Dr. Kalfas, a general practitioner, provided medical care to CCDC inmates, Nolan states that in July 2017 Daley "refused necessary specialized treatments beyond the scope and ability of the Jail Doctor." (Doc. # 1 at 2-3). Nolan again requested specialized medical care in September 2017, which Daley again denied. *Id*. 7-8. Nolan alleges that in May 2018, Daley "said to me to quit bothering him about getting more medical care . . . [and] told me to ask for medical help when I got to prison." *Id.* at 10. Nolan states that he collapsed shortly after his arrival at a state prison in June 2018. *Id.* After a medical examination, a brain surgeon performed

a carotid endarterectomy to remove a 95% blockage. *Id.* In his complaint, Nolan contends that Daley displayed deliberate indifference to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments and seeks compensatory and punitive damages. *Id.* at 10-11.

Upon initial screening, the Court dismissed Nolan's claims against Circuit Court Judge Lape as barred by the statute of limitations, sovereign immunity, and absolute judicial immunity. (Doc. # 6). The Court also dismissed any claim against Daley arising out of conduct occurring before November 21, 2017, as barred by the statute of limitations. *Id*. However, it directed that Daley be served with process to address Nolan's allegations regarding his alleged statements in May 2018. *Id*.

In his pending motion to dismiss the complaint, Daley contends that Nolan's claims are barred by the statute of limitations.[1] Specifically, Daley asserts that Nolan's claims regarding the denial of medical care accrued when Daley first allegedly refused to provide him with specialized medical care in July 2017. As for Nolan's allegations regarding their conversation in May 2018, Daley notes that Nolan does not allege either that Nolan requested medical care at that time or that Daley refused any request for medical care at that time. (Doc. # 9) (citing *Scott v. Ambani*, 577 F.3d 642, 646-47 (6th Cir. 2009)). In his response, Nolan states that Daley was "well aware" in May 2018 that he wanted additional medical care, and Daley's statement that Nolan should "stop bothering him" about it demonstrates that Nolan was still requesting medical care at that time. (Doc. #

[1] Daley also contends that Nolan's complaint should be dismissed because it did not allege that he had exhausted his administrative remedies. (Doc. # 9 at 90-92). However, prisoners are not required to include such allegations in their complaints. *Jones v. Bock*, 549 U.S. 199 (2007).

13 at 1). Nolan also suggests that the statute of limitations should be extended under the continuing violations doctrine. *Id.*

Although Nolan's complaint was docketed in this Court on December 4, 2018, he signed his complaint on November 21, 2018. (Doc. # 1 at 11). Because Nolan was incarcerated when he sent his complaint, it is subject to the prison mailbox rule, and is deemed filed on the day it was signed. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). A one-year statute of limitations applies to civil rights claims arising out of conduct occurring in Kentucky. Ky. Rev. Stat. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013). The complaint is therefore timely only with respect to claims accruing on or after November 21, 2017.

The parties agree that the only event occurring after that date about which the plaintiff complains is his conversation with Daley in May 2018. Where they disagree is whether that conversation involved any independently-actionable conduct upon which the plaintiff may base a claim regarding his medical care. The Court agrees with Daley that it did not, and hence Nolan's claims are time-barred.

As a threshold matter, the Court concludes that the continuing violations doctrine, a theory derived in the context of employment discrimination cases to extend the limitations period under certain circumstances, does not apply to Nolan's claims regarding his medical care under Section 1983. The Sixth Circuit long ago held that "[t]his Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). The Sixth Circuit has consistently refused to apply the doctrine to claims regarding the adequacy or denial of medical care in prison. *Cf. Bruce v. Corr. Med. Servs., Inc.*, 389 F.

App'x 462, 466 (6th Cir. 2010). Finally, the doctrine does not apply here because "[p]assive inaction does not support a continuing violation theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). Nolan's allegation that Daley merely continued to adhere to his prior refusal to provide medical care by a specialist does not constitute new affirmative action that could support application of the continuing violations doctrine.

The Court further concludes that Nolan's claims regarding Daley's refusal to provide medical care through a specialist accrued in July 2017, and certainly no later than September 2017. "In determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights." *Ruiz-Bueno v. Maxim Healthcare Servs., Inc.*, 659 F. App'x 830, 834 (6th Cir. 2016) (quoting *Trzebuckowski v. City of Cleveland*, 319 F. 3d 853, 856 (6th Cir. 2003)). Here, in July 2017 Daley told Nolan that he would not provide:

> the medicines the Plaintiff needed and had been taking for some time, including medicines for pain and anxiety. The Jailor himself also refused necessary specialized treatments beyond the scope and ability of the Jail Doctor who was a General practicing Doctor. After discussing it with the Plaintiff, the Plaintiff's lawyer and the Doctor, the Jailor continued to refuse necessary treatment.

(Doc. # 1 at 3). When Nolan repeated his desire "to get medical treatment for his falling and many medical conditions" in September 2017, Daley flatly told him that the treatment he wanted "was out of the question and too expensive for the County but he hoped the Plaintiff got the medical treatment needed when he got to prison." (Doc. # 1 at 8). These alleged statements by Daley put Nolan on notice that the jail would not provide the treatment he desired. Nolan thus had a complete and present cause of action at that time, and the limitations period began to run.

The brief conversation between Nolan and Daley in May 2018 does not alter the Court's conclusion. Even assuming that Daley's statement to Nolan "to quit bothering him about getting more medical care" suggests both a request by Nolan for outside medical care and a refusal by Daley to provide it, this does not alter the accrual date. Instead, this statement indicated only Daley's continued adherence to his initial decision in July 2017 to provide medical care only from the general practitioner at the jail. As the Court explained in a similar case:

> The Defendants determined to treat [Cuco's] anemia with oral iron immediately upon her arrival at FMC and . . . continued to adhere to this treatment regimen throughout December 2003 and January 2004, notwithstanding Cuco's repeated complaints of the discomfort it was causing her. This establishes that the conduct complained of, Defendants' decision to treat her anemia with oral iron, had definitively "occurred" not later than late December to early January. By February 11, 2004 . . . Cuco was no longer suffering from "continuing violations" of her Eighth Amendment rights, but rather was merely experiencing the "continuing effects" of the Defendants' initial treatment decision.

*Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *29-30 (E.D. Ky. June 9, 2006) *aff'd and remanded sub nom.*, 257 F. App'x 897 (6th Cir. 2007). Because Nolan was made aware in July 2017 that Daley would not provide the specialized medical care he sought, his claims accrued at that time. Nolan did not file suit until November 2018, more than one year later, and his claims are therefore time-barred.

Accordingly, it is **ORDERED** as follows:

1. Defendant Daley's motion to dismiss the complaint (Doc. # 9) is **GRANTED**;

2. The Court will enter a Judgment in favor of Defendant Daley concurrently herewith; and

3. This matter is **STRICKEN** from the active docket.

This 15th day of May, 2019.

**Signed By:**

***David L. Bunning*** *DB*

**United States District Judge**

J:\DATA\ORDERS\ProSe\18-201-DLB Order Granting MTD.docx